PEOPLE v LEWIS (ON REMAND)

Docket No. 274508. Submitted October 15, 2009, at Lansing. Decided
    January 12, 2010. Approved for publication March 4, 2010, at 9:00
    a.m.

    Reginald L. Lewis was convicted by a jury in the Wayne Circuit
    Court, David J. Allen, J., of first-degree premeditated murder.
    Defendant appealed, and the Court of Appeals, METER, P.J., and
    SAWYER and WILDER, JJ., affirmed in an unpublished opinion per
    curiam, issued April 15, 2008 (Docket No. 274508). The Supreme
    Court, in lieu of granting leave to appeal, vacated in part the
    opinion of the Court of Appeals and remanded the case to the
    Court of Appeals for reconsideration of defendant's Confrontation
    Clause, sufficiency of the evidence, and ineffective assistance of
    counsel issues in light of Melendez-Diaz v Massachusetts, 557 US
    ___; 129 S Ct 2527; 174 L Ed 2d 314 (2009). 485 Mich 878 (2009).

    On remand, the Court of Appeals held:

    1. Defendant's constitutional right to confront the witnesses
against him was not violated when the trial court admitted into
evidence an autopsy report prepared by two nontestifying medical
examiners through the testimony of a third medical examiner from
the same laboratory.

    2. Because the autopsy report was not prepared primarily for
use in a later criminal prosecution, but was prepared pursuant to
a duty imposed by statute, and defendant cross-examined the
testifying medical examiner regarding the examiner's independent
opinions that were based on the autopsy report, the report is not
testimonial evidence and defendant was not denied his right to
confront the two nontestifying medical examiners. The Supreme
Court's determination in Melendez-Diaz that the disputed evi-
dence was testimonial was based on characteristics that are not
present with regard to the autopsy report in this case.

    3. The admission of the report through the testimony of the
third medical examiner was not outcome determinative because
the report did not aid in establishing the identity of the perpetra-
tor, which was the central issue in the case.

4. Defendant's trial counsel was not ineffective for failing to object to the admission of the autopsy report on Sixth Amendment grounds. Counsel's failure to object did not fall below an objective standard of reasonableness and defendant cannot demonstrate that, but for the attorney's alleged error, the outcome of the trial would have been different. There was sufficient evidence to support the conviction absent the report.

5. The evidence was sufficient for a rational trier of fact to find that defendant was the person who killed the victim. The trial court did not err by denying defendant's motion for a directed verdict that alleged that there was insufficient evidence identifying defendant as the perpetrator of the crime.

6. The autopsy report detailing the stab wounds sustained by the victim provided evidence of intent and premeditation. The prosecution, even without the report, presented sufficient evidence, including evidence regarding defendant's acts after the homicide, for a rational trier of fact to find intent and premeditation. The trial court did not err by denying defendant's motion for a directed verdict that alleged that insufficient evidence of premeditation was presented.

Affirmed.

1. CONSTITUTIONAL LAW — CONFRONTATION CLAUSE — TESTIMONIAL STATEMENTS.

Testimonial hearsay is inadmissible against a criminal defendant unless the declarant is unavailable at trial and there was a prior opportunity for cross-examination of the declarant; statements are testimonial where the primary purpose of the statements or the questioning that elicits them is to establish or prove past events potentially relevant to later criminal prosecution.

2. CONSTITUTIONAL LAW — CONFRONTATION CLAUSE — TESTIMONIAL STATEMENTS.

The class of testimonial statements covered by the Confrontation Clause includes material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; also included are extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, confessions, and statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial (US Const, Am VI; Const 1963, art 1, § 20).

3. CRIMINAL LAW — HOMICIDE — ELEMENTS — IDENTITY — PREMEDITATION — DELIBERATION.

Identity is an element of every criminal offense; the elements of the crime of premeditated murder are an intentional killing of a human being with premeditation and deliberation; premeditation and deliberation may be inferred from the circumstances and minimal circumstantial evidence is sufficient to prove an actor's state of mind (MCL 750.316).

*Michael A. Cox,* Attorney General, *B. Eric Restuccia,* Solicitor General, *Kym L. Worthy,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Jeffrey Caminsky,* Principal Attorney, Appeals, for the people.

*Gerald M. Lorence* for defendant.

ON REMAND

Before: METER, P.J., and SAWYER and WILDER, JJ.

PER CURIAM. In *People v Lewis,* unpublished opinion per curiam of the Court of Appeals, issued April 15, 2008 (Docket No. 274508), we affirmed defendant's conviction of first-degree premeditated murder, MCL 750.316. Following the United States Supreme Court's decision in *Melendez-Diaz v Massachusetts,* 557 US ___; 129 S Ct 2527; 174 L Ed 2d 314 (2009), and in lieu of granting leave to appeal, the Michigan Supreme Court vacated our opinion in part and remanded "for reconsideration of . . . defendant's Confrontation Clause, sufficiency of the evidence, and ineffective assistance issues in light of *Melendez-Diaz." People v Lewis,* 485 Mich 878 (2009). We again affirm.

As we stated in our previous opinion:

Defendant's conviction[] ar[o]se from the death of his longtime girlfriend, Tomeka Cook. After a dispute with

> defendant over money, Cook was found dead with multiple
> stab wounds. [*Lewis,* unpub op at 1.]

An autopsy was performed on Cook's body and the trial court admitted into evidence the autopsy report prepared by two nontestifying medical examiners through the testimony of a third medical examiner from the same laboratory, Dr. Carl Schmidt. In his first claim on remand, defendant argues that the admission of the autopsy report violated his constitutional right to confront witnesses against him. We disagree. This issue is unpreserved because defendant failed to object to the admission of the autopsy report and Dr. Schmidt's testimony on Sixth Amendment grounds. Therefore, we review defendant's claim for plain error that affected his substantial rights. *People v Carines,* 460 Mich 750, 764; 597 NW2d 130 (1999); *People v Bauder,* 269 Mich App 174, 180; 712 NW2d 506 (2005).

> We will reverse only if we determine that, although defendant was actually innocent, the plain error caused him to be convicted, or if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings," regardless of his innocence. [*People v Thomas,* 260 Mich App 450, 454; 678 NW2d 631 (2004) (citation omitted).]

The Confrontation Clause provides: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. Our state constitution also guarantees the same right. Const 1963, art 1, § 20. To preserve this right, testimonial hearsay is inadmissible against a criminal defendant unless the declarant was unavailable at trial and there was a prior opportunity for cross-examination of the declarant. *Crawford v Washington,* 541 US 36, 50-51, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *People v Shepherd,* 472 Mich 343, 347;

697 NW2d 144 (2005).[1] Statements are testimonial where the "primary purpose" of the statements or the questioning that elicits them "is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

In our previous opinion, we thoroughly discussed this Court's applications of *Crawford* in *People v Jambor* *(On Remand)*, 273 Mich App 477; 729 NW2d 569 (2007), and *People v Lonsby*, 268 Mich App 375; 707 NW2d 610 (2005). On the basis of these decisions, we concluded that the autopsy report was nontestimonial because it "was 'not prepared in anticipation of litigation against defendant,' but pursuant to a 'duty imposed by law,' MRE 803(8)." *Lewis*, unpub op at 4 (citation omitted), citing *Jambor*. We also noted that a medical examiner is required by statute to investigate the cause and manner of death of an individual under certain circumstances, including death by violence, MCL 52.202(1)(a), and thus further concluded that the admission of the autopsy report through Dr. Schmidt's testimony did not violate defendant's Sixth Amendment rights under *Crawford* and *Davis*.[2]

---

[1] The Confrontation Clause does not restrict state law in the determination whether hearsay is admissible when it is nontestimonial, however. *Crawford*, 541 US at 68.

[2] We previously observed "the autopsy report contained enough 'objective' information and statements upon which Dr. Schmidt could form an independent opinion about which he could be cross-examined." *Lewis*, unpub op at 5. We stated:

Dr. Schmidt testified that the autopsy report showed that Tomeka had sustained several stab wounds, and six wounds on the backs of her hands, which the report described as "defensive wounds." He testified that the one of the medical examiners who performed the autopsy had concluded that the cause of death was multiple stab wounds and the manner of death was homicide. After reviewing the report and sketch upon which the nontestify-

Our Supreme Court has instructed this Court to reconsider defendant's Confrontation Clause argument in light of *Melendez-Diaz*. That case involved the use of affidavits by forensic analysts to support the defendant's convictions of distributing and trafficking in cocaine. 557 US at ___; 129 S Ct at 2530-2531; 174 L Ed 2d at 319-321. At trial, over the defendant's objection, the court admitted three notarized "certificates of analysis" from nontestifying laboratory analysts who, at the request of the police, tested the substance in bags seized by the police. *Id.* The certificates stated that chemical testing identified the substance in the bags as cocaine. *Id.* Massachusetts' law permitted the certificates to serve as ' "prima facie evidence of the composition, quality, and the net weight" ' of the narcotic analyzed, and the trial court held that the authors of the certificates were not subject to confrontation. 557 US at ___; 129 S Ct at 2532; 174 L Ed 2d at 321.

On appeal, the defendant in *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2531; 174 L Ed 2d at 320, challenged the admission of the certificates and claimed that the analysts were required to testify in person. The United States Supreme Court reversed the defendant's convictions, holding that the admission of the documents violated the Confrontation Clause. The Supreme Court's decision reaffirmed the principles set forth in *Crawford*. Justice Scalia, writing for the Court, reiterated *Crawford*'s description of "the class of testimonial statements covered by the Confrontation Clause," that is,

ing medical examiner based her opinion, Dr. Schmidt agreed with her conclusions about cause and manner of death, and with her description of the wounds on the backs of the hands as defensive. Dr. Schmidt testified that, in his opinion, Tomeka could have been killed on February 2, 2003, or February 3, 2003, but not on February 4, 2003, because that is when the body was found and rigor mortis was waning. [*Id.*]

"material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." [557 US at ___; 129 S Ct at 2531; 174 L Ed 2d at 321, quoting *Crawford*, 541 US at 51-52 (quotation marks and citations omitted.]

The Supreme Court concluded in *Melendez-Diaz* that the "certificates of analysis" were affidavits, and that they were statements offered against the defendant to prove a contested fact. 557 US at ___; 129 S Ct at 2532; 174 L Ed 2d at 321. As such, the certificates were testimonial in nature and subject to the Confrontation Clause. *Id.* The fact that the "sole purpose" of the certificates was to serve as prima facie evidence at trial further supported the Court's conclusion that they were testimonial. *Id.* The Supreme Court summarized its conclusion:

In short, under our decision in *Crawford* the analysts' affidavits were testimonial statements, and the analysts were "witnesses" for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to " 'be confronted with' " the analysts at trial. *Crawford, supra*, at 54, 124 S Ct 1354, 158 L Ed 2d 177. [*Id.* (emphasis in original).]

Applying *Melendez-Diaz* to the instant case, we again conclude that defendant has failed to establish plain error in the admission of the report. The Supreme Court's determination that the forensic analysts' certificates in *Melendez-Diaz* were testimonial was based on characteristics that are not present here. Unlike the certificates, which were prepared for the "sole purpose" of

providing "prima facie evidence" against the defendant at trial, *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2532; 174 L Ed 2d at 321, the autopsy report was prepared pursuant to a duty imposed by statute. *Lewis*, unpub op at 4-5; MRE 803(8); MCL 52.202(1)(a). As we stated in our previous opinion:

> [W]hile it was conceivable that the autopsy report would become part of [a] criminal prosecution, investigations by medical examiners are required by Michigan statute under certain circumstances regardless of whether criminal prosecution is contemplated. [*Lewis*, unpub op at 4.]

Furthermore, unlike the way the certificates in *Melendez-Diaz* were used, Dr. Schmidt formed independent opinions based on objective information in the autopsy report and his opinions were subject to cross-examination. See *Lewis*, unpub op at 5; cf., *Jambor*, 273 Mich App at 488, and *Lonsby*, 268 Mich App at 392. Because the autopsy report was not prepared primarily for use in a later criminal prosecution and defendant cross-examined Dr. Schmidt regarding his independent opinions based on the autopsy report, the report is not testimonial evidence and defendant was not denied the right to be confronted by the two nontestifying medical examiners who prepared it. *Davis*, 547 US at 822; *Lonsby*, 268 Mich App at 392.

In addition, as we previously concluded, the admission of the report through the testimony of Dr. Schmidt was not outcome determinative: "There is no dispute that a crime was committed, and the autopsy did not aid in establishing the identity of the perpetrator, which was the central issue in this case." *Lewis*, unpub op at 6.[3]

---

[3] The *Melendez-Diaz* Court noted that "[t]he right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections." *Melendez-Diaz*, 557 US ___ n 3; 129 S Ct at 2534 n 3; 174 L Ed 2d at 323 n 3.

In defendant's second claim on remand, he argues that his attorney was ineffective for failing to object to the admission of the autopsy report on Sixth Amendment grounds. We disagree. The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). The trial court must first find the facts, and then decide whether those facts constitute a violation of the defendant's constitutional right to counsel. *Id.* The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.* at 484-485.

Effective assistance is strongly presumed. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). To demonstrate ineffective assistance, a defendant must show: (1) that the defendant's attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced the defendant that the defendant was deprived of a fair trial. *Grant*, 470 Mich at 485-486. Prejudice exists if a defendant shows a reasonable probability that the outcome would have been different but for the attorney's errors. *Id.* at 486.

Because the admission of the autopsy report did not violate defendant's right of confrontation, his attorney's failure to object to the admission of the report did not fall below an objective standard of reasonableness. Moreover, defendant cannot demonstrate that, but for the attorney's alleged error, the outcome of the trial would have been different. *Id.* at 485-486. As we note later in this opinion, there was sufficient evidence to support defendant's first-degree murder conviction absent the report.

In defendant's last two claims on remand, he first argues that the prosecutor failed to present sufficient

evidence identifying him as the perpetrator to support his conviction, and he second challenges the trial court's denial of his motion for a directed verdict, reiterating his argument that there was insufficient evidence identifying him as the perpetrator and arguing that the evidence of premeditation was "scarce and circumstantial." We disagree. "A claim of insufficient evidence is reviewed de novo, in a light most favorable to the prosecution, to determine whether the evidence would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). Circumstantial evidence and reasonable inferences may be satisfactory proof of the elements of a crime. *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000). A challenge to the trial court's decision on a motion for a directed verdict has the same standard of review as a challenge to the sufficiency of the evidence. *People v Aldrich*, 246 Mich App 101, 122-123; 631 NW2d 67 (2001).

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "The elements of premeditated murder are (1) an intentional killing of a human being (2) with premeditation and deliberation." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). ' "[P]remeditation and deliberation may be inferred from circumstances," ' and "[m]inimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2002) (citation omitted).

Again, the autopsy report did not aid in establishing the identity element of the crime. *Lewis*, unpub op at 5. Accordingly, even if the autopsy report had constituted testimonial evidence and defendant was denied his Sixth Amendment rights, the admission of the report

would not have been outcome determinative to the issue of identity. Consistent with our previous opinion, we conclude that the evidence was sufficient for a rational trier of fact to find that defendant was Cook's killer because his blood was recovered from the back door of Cook's home, where she was found dead with defensive wounds. *Lewis,* unpub op at 10-11. For this same reason, the trial court did not err by denying defendant's motion for a directed verdict based on his identity argument.

Furthermore, as we stated in our previous opinion, the autopsy report detailing the numerous stab wounds that Cook sustained provided evidence of intent and premeditation. *Lewis,* unpub op at 11-12. However, even without the report, the prosecution presented sufficient evidence for a rational trier of fact to find intent and premeditation. Defendant and Cook had a contentious relationship. The autopsy photographs demonstrated that Cook sustained numerous stab wounds. Dr. Schmidt independently opined that some of Cook's wounds were defensive, indicating a struggle, which can be evidence of premeditation. See *id.* at 12, citing *People v Johnson,* 460 Mich 720, 730, 733; 597 NW2d 73 (1999). A rational trier of fact could also find premeditation from evidence of defendant's acts after the homicide. See *id.* at 11, citing *People v Gonzalez,* 178 Mich App 526, 533; 444 NW2d 228 (1989) (a defendant's conduct after the homicide may establish premeditation). As we thoroughly discussed in our previous opinion, it could be inferred that defendant attempted to construct an alibi by spending time with friends, that he acted secretively with telephone calls, and that, several months after Cook's death, he evaded conversation about Cook. Because the prosecution presented sufficient evidence for a rational trier of fact to find both intent and premeditation, the trial court did not err by

denying defendant's motion for a directed verdict on the basis of his premeditation argument.

Affirmed.