# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KAYCEE SMITH,

Defendant-Appellant.

UNPUBLISHED
January 26, 2016

No. 322752
Wayne Circuit Court
LC No. 13-009157-FH

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant, Kaycee Smith, appeals as of right his jury trial convictions of possession with intent to deliver 450 to 999 grams of cocaine, MCL 333.7401(2)(a)(*ii*); possession with intent to deliver under 50 grams of heroin, MCL 333.7401(2)(a)(*iv*); possession with intent to deliver less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*); and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent terms of 135 months to 30 years' imprisonment for the possession with intent to deliver 450 to 999 grams of cocaine conviction, 5 years to 20 years' imprisonment for the possession with intent to deliver under 50 grams of heroin conviction, and 1 year to 4 years' imprisonment for the possession with intent to deliver less than five kilograms of marijuana conviction, to be served consecutive to 2 years' imprisonment for the felony-firearm conviction. We affirm.

This appeal involves a drug enforcement raid conducted on June 5, 2013, at the home owned by defendant, located at 15480 Piedmont, Detroit, Michigan. During the raid, officers confiscated $19,525 in cash, an unloaded Ruger Ranch rifle, along with 692.8 grams of cocaine, 21.8 grams of heroin and seven Ziploc gallon freezer-sized bags containing 4,420 grams of marijuana from the floor of the master bedroom closet of the home.

Defendant asserts that the trial court erred in denying his motions for a new trial and judgment notwithstanding the verdict (JNOV). Defendant is in fact challenging the trial court's findings that there was sufficient evidence to sustain his convictions and that the jury's verdicts were not contrary to the great weight of the evidence. Specifically, defendant argues a lack of evidence to support the contention that the drugs, money and rifle seized by police were in his possession, given the residence of other individuals in the home and the absence of any evidence or witnesses directly linking him to the contraband.

-1-

In general, a defendant's claim that the verdict was contrary to the great weight of the evidence is reviewed to determine whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). "When reviewing a defendant's challenge to the sufficiency of the evidence, [this Court] review[s] the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (citation and quotation marks omitted).

"A challenge to the trial court's decision on a motion for a directed verdict has the same standard of review as a challenge to the sufficiency of the evidence." *People v Lewis (On Remand)*, 287 Mich App 356, 365; 788 NW2d 461 (2010), aff'd in part and vacated in part on other grounds 490 Mich 921 (2011); see also *People v Couzens*, 480 Mich 240, 244; 747 NW2d 849 (2008). Only the evidence that was presented before the motion for a directed verdict was made is considered. *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979). When reviewing a decision to grant or deny a motion for a directed verdict, the evidence is viewed de novo "in a light most favorable to the prosecution" to ascertain "whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003). The trial court cannot determine witness credibility when ruling on a directed verdict motion. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). "A directed verdict of acquittal is appropriate only if, considering all the evidence in the light most favorable to the prosecution, no rational trier of fact could find that the essential elements of the crime charged were proven beyond a reasonable doubt." *Id*.

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). To support a conviction for possession with intent to deliver narcotics, under MCL 333.7401(2), a prosecutor is required to prove, beyond a reasonable doubt four elements: (1) that the substance recovered is a narcotic or substance contemplated by the statutory scheme, (2) the drugs are in a mixture commensurate in weight with the limitations specified by the statutory subsections, (3) that defendant was not authorized to possess the substances, and (4) that defendant knowingly possessed the narcotics or drugs with the intent to deliver. See *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). An actual delivery is not required to prove an intent to deliver. *People v Gonzalez*, 256 Mich App 212, 226; 663 NW2d 499 (2003). Whether defendant knowingly possessed the cocaine with the intent to deliver constitutes an issue for the trier of fact. *People v Whittaker*, 187 Mich App 122, 128; 466 NW2d 364 (1991). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). "Possession with intent to deliver can be established by circumstantial evidence and reasonable inferences arising from that evidence, just as it can be established by direct evidence." *Wolfe*, 440 Mich at 526. "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

Defendant does not dispute the nature of the substances or their weight. He also does not contend that he was authorized to possess the substances. The focus of defendant's claim is solely premised on his assertion that he did not possess the drugs or firearm. A demonstration of dominion and control, or the right to exert control, over something with the knowledge of its presence and character is sufficient to establish possession. *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003). Actual physical possession of the substance is unnecessary to establish the elements of the crime. "[C]onstructive possession will suffice. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between defendant and the contraband. Possession is attributed not only to those who physically possess the drugs, but also to those who control its disposition. In addition, possession may be either joint or exclusive." *People v Johnson*, 466 Mich 491, 500; 647 NW2d 480 (2002) (citations omitted).

It was demonstrated that defendant is the owner of the home where the drugs and firearm, along with substantial cash, were found in the closet of the master bedroom. The home was equipped with surveillance cameras, which are often found to be present in houses that contain a valuable or sizeable amount of narcotics. The master bedroom of the home appeared used or lived in based on furnishings and clothing in the room and mail was found in the closet, within the vicinity of the confiscated materials that was addressed to defendant at that location, with at least one of the two mail items having a recent postmark. No personal items associated with the individual that defendant alleged was living at the residence, Kevin Sadler, were found at that location to suggest Sadler's residence. Defendant's son, Kaycee Heard, acknowledged having lived in the home with defendant and although he asserted that he and defendant had been staying at alternative locations for the days immediately preceding the police raid, Heard was at the home packing personal belongings at the time of the raid. Defendant, Heard and Sadler were the only individuals identified as having keys to access the home, and Heard, twice during his testimony, identified the master bedroom as defendant's room. In addition, about an hour into the effectuation of the search warrant, defendant's sister came to the home seeking defendant suggesting his residence or frequent presence at that location.

Detroit Police Department Lieutenant David Hansberry, based on his experience with the narcotics unit and his work as a police officer, testified that the camera system installed at the home was consistent with houses engaged in larger scale narcotics transactions. Detroit Police Department Sergeant Stephen Geelhood characterized the amount of drugs seized from this residence as a "major distribution," with the value of the cocaine at the time of seizure being approximately $270,000, or the equivalent of $400 a gram, implying that the amount of the drugs seized belied possession for personal use. In addition, when police arrived to effectuate the search warrant, defendant was in the driveway speaking with Sadler. On seeing the police van arrive at the residence, defendant and Sadler fled the scene. "[E]vidence of flight is admissible to support an inference of 'consciousness of guilt' and the term 'flight' includes such actions as fleeing the scene of the crime." *People v Goodin*, 257 Mich App 425, 432-433; 668 NW2d 392 (2003).

Although defendant, through Heard, provided testimony suggesting that defendant was not currently residing at the property, the jury was free to disbelieve this testimony as questions of witness credibility are left to the trier of fact. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). Typically, this Court will decline to interfere with the role of the trier of fact

in determining the credibility of the witnesses or in determining the weight to be attributed to the evidence. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). In addition, testimony by Heard indicating that defendant was not residing at the home within the past two or three days is not the equivalent of establishing that defendant did not have control of the premises and its contents, as demonstrated by defendant's ownership of the property, possession of a key, and the maintenance of personal items within the home and closet where the contraband was found. Thus, sufficient evidence was adduced at trial to support the jury's determination that defendant possessed or controlled the drugs and firearm.

Defendant also asserts that the verdict was against the great weight of the evidence. As discussed by this Court in *Musser*, 259 Mich App at 218-219:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. [U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. [Citations and quotation marks omitted.]

Defendant challenges the verdict on the same grounds that he contests the sufficiency of the evidence; namely, that the evidence offered to prove his possession of the contraband was inadequate. In other words, defendant's arguments pertaining to the great weight of the evidence comprise merely a reiteration of his argument challenging the sufficiency of the evidence. As discussed in conjunction with defendant's arguments regarding the sufficiency of the evidence, there was substantial circumstantial evidence establishing defendant's possession of the contraband including his ownership of the house and the possession of a key to the residence wherein the drugs and firearm were located, testimony and physical evidence indicating his residency in the bedroom where the contraband was seized, and his flight from police. Further, defendant's challenge to the weight of the evidence is merely a contention that the jury erred in its credibility determinations. "[A]bsent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility for the constitutionally guaranteed jury determination thereof." *Lemmon*, 456 Mich at 642. Further, it is well recognized that "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *Id.* at 643 (citation omitted). Consequently, the verdict was not contrary to the great weight of the evidence identifying defendant as having possession of the contraband.

Next, defendant argues that the trial court erred in denying his motion to suppress the evidence obtained through a defective search warrant. Specifically, defendant contends that the affidavit prepared in support of the warrant was premised on an unreliable confidential informant, lacked specificity, involved stale information and contained purposefully misleading and untrue statements by the police officer serving as the affiant.

This Court reviews a trial court's factual findings for clear error and a trial court's legal conclusions de novo for preserved issues pertaining to the suppression of evidence. *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). A trial court's decision to conduct an evidentiary hearing on a challenge to the validity of a search warrant affidavit is reviewed for an abuse of discretion. *People v Martin*, 271 Mich App 280, 309; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008).

The Fourth Amendment of the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV (emphasis added).]

"A reviewing court must give great deference to a magistrate's finding of probable cause to issue a search warrant." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008). "[T]his Court need only ask whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Martin*, 271 Mich App at 297 (quotation marks and citation omitted). "To find a substantial basis, we must 'ensure that there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Mullen*, 282 Mich App at 22, quoting *Martin*, 271 Mich App at 297. As discussed by the United States Supreme Court in *Franks v Delaware*, 438 US 154,171; 98 S Ct 2674; 57 L Ed 2d 667 (1978):

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

"The defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *People v Waclawski*, 286 Mich App 634, 701; 780 NW2d 321 (2009).

Beginning with a review of the content of the affidavit, there is no support for defendant's claims. The affidavit provides that information was obtained from a confidential informant, regarding the storage and sale of illegal narcotics, including cocaine and marijuana that was occurring at a specified location. The confidential informant had observed such transactions, from inside the home, within the past 48 hour period, which was corroborated by

surveillance conducted outside that location indicating behavior consistent with illegal drug trafficking. A previous drug raid had occurred at that location in 2011, which resulted in the confiscation of illegal drugs and weapons. The confidential informant relied upon for purposes of the affidavit had several prior interactions with police, which had resulted in the successful confiscation of substantial amounts of illegal drugs. Hence, on its face, the affidavit provided sufficient information that "a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Martin*, 271 Mich App at 297. Further, "[a] search warrant must describe with particularity the place to be searched and the persons or things to be seized." *Id*. at 303. "The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *Id*. at 304 (internal quotations omitted). The affidavit contained the necessary specificity because it identified the location by an address along with the items to be seized, specifically illegal narcotics including cocaine and marijuana along with firearms.

There is, likewise, no support for defendant's contention that the information obtained from the confidential informant was stale. In determining whether information is stale, "the test is not whether the items could be moved or changed but whether there was a 'fair probability' that the items were in the place to be searched." *People v Sobczak-Obetts*, 253 Mich App 97, 110; 654 NW2d 337 (2002). The confidential informant indicated having observed drug trafficking from within the residence in the past 48 hour period, which was confirmed by surveillance. The amount of drugs alleged indicated that the trafficking was not restricted to a single transaction but involved an ongoing drug enterprise and that the location identified had previously been the subject of a narcotics and weapons seizure. In determining whether a search warrant is stale, it is necessary to evaluate the circumstances of each case. "The threshold inquiry looks at the life cycle of the evidence sought, given a totality of circumstances, that includes the criminal, the thing seized, the place to be searched and, most significantly, the character of the criminal activities under investigation." *People v Russo*, 439 Mich 584, 605; 487 NW2d 698 (1992) (citation omitted). Specifically:

> Time as a factor in the determination of probable cause to search is weighed and balanced in light of other variables in the equation, such as whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of a scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense. [*Id.* at 605-606.]

As such, the information used to justify issuance of the search warrant cannot be construed as stale because it demonstrated that the drug enterprise was ongoing and, therefore, it was reasonable to conclude that the contraband would still be found at the residence.

Defendant further argues that the affiant for the search warrant affidavit purposefully and intentionally included false information regarding the previous raid at the Piedmont address

involving defendant. At the *Franks*[1] hearing it was determined that a prior narcotics raid did occur at defendant's home in 2011, involving the seizure of drugs and weapons, and that defendant was present for the event. Contrary to the affidavit, however, defendant was never charged or formally arrested in that incident. The affiant explained the discrepancy by relating that he had been informed of the prior incident by another officer and had used a police database in an attempt to confirm that officer's recollection of the events. The database print out indicated a narcotics raid at the location, on the indicated date, with the arrest of defendant. As noted by the trial court, there is no evidence to support defendant's contention that the inclusion of this information by the affiant was a deliberate untruth, given the content of the report generated from the database and, instead, comprised a "mistaken belief." Notably, the only inaccurate statement was the one indicating that defendant was arrested during the previous raid. The remaining statements were determined to be valid or correct. Thus, defendant has failed to demonstrate that the averring officer "knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit[.]" *Waclawski*, 286 Mich App at 701. In addition, even if the inaccurate statement were omitted from the affidavit, sufficient material was included to support probable cause for issuance of a warrant. In other words, based on the remaining content of the affidavit "a substantial basis" existed to "ensure that there [was] a fair probability that contraband or evidence of a crime [would] be found in [the] particular place." *Mullen*, 282 Mich App at 22 (citation and quotation marks omitted).

Finally, contrary to defendant's position on this issue, even if the warrant were found to be defective, which it is not, the good-faith exception to the exclusionary rule would be applicable. "The purpose of the exclusionary rule is to deter police misconduct." *People v Goldston*, 470 Mich 523, 526; 682 NW2d 479 (2004). In accordance with the good-faith exception to the exclusionary rule, as recognized in Michigan, suppression is not required when "[t]he police officers' reliance on the district judge's determination of probable cause and on the technical sufficiency of the search warrant was objectively reasonable." *Id.* at 541-542. As delineated in *United States v Leon*, 468 US 897, 923; 104 S Ct 3405; 82 L Ed 2d 677 (1984), four circumstances exist in which the good-faith exception to the exclusionary rule are found to be inapplicable, which include when: (1) "the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," (2) "the issuing magistrate wholly abandoned his judicial role," such that "no reasonably well trained officer should rely on the warrant," (3) an officer relies on a warrant "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' " or (4) a warrant that is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* There is no suggestion, in this case, that the magistrate "abandoned his judicial role," or that the reliance of the officers executing the warrant was unreasonable because of deficiencies that were evident on the face of the warrant, or the lack of an "indicia of probable cause" within the affidavit. Further, other than a blatant contention, without any evidence, that the affiant in this situation engaged in a purposeful mischaracterization or deliberate falsehood regarding the 2011 raid of the same property, there is

---

[1] *Franks v Delaware*, 438 US at 155-156.

no evidence to suggest that the affiant purposefully included inaccurate information within the document. As demonstrated at the *Franks* hearing, the affiant received information from a police source regarding the prior events and sought to corroborate them through a police database. The database provided information that allowed the affiant to reasonably believe that the information included was accurate. As such, if it was found to be necessary, the good-faith exception to the exclusionary rule would be applicable.

Defendant also asserts that the trial court erred in refusing to provide the jury with a requested "mere presence" instruction. At trial, defendant asserted he was merely at the home at the time of the raid and was not living at the residence, asserting the contraband found and seized by police was the property of Sadler. As such, defendant argued he could not be in possession of the contraband.

"This Court reviews de novo claims of instructional error. In reviewing a claim of instructional error, 'this Court examines the instructions as a whole, and, even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried.' " *Martin*, 271 Mich App at 337-338 (citation omitted).

The instruction pertaining to "mere presence," CJI2d 8.5, provides:

Even if the defendant knew that the alleged crime was planned or was being committed, the mere fact that [he/she] was present when it was committed is not enough to prove that [he/she] assisted in committing it.

The language of the jury instruction implies that it is applicable in situations where the prosecution is proceeding on an aiding and abetting theory. See *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999) (A defendant's "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime."). The instruction may also be appropriate to provide when a defendant is charged with constructive possession. *People v Echavarria*, 233 Mich App 356, 370; 592 NW2d 737 (1999).

In the circumstances of this case, defendant was charged as the principal and not as an aider and abettor, obviating the propriety of the instruction. Defendant contends that, during closing arguments, the prosecutor alluded to defendant having joint possession of the contraband with Sadler. A close review of the prosecutor's statements cited by defendant, particularly when viewed in context, demonstrates that the prosecutor was not suggesting that defendant was assisting Sadler; rather, just the opposite. The prosecutor's theory was and remained that defendant was in possession and control of the contraband and that Sadler might be assisting defendant or involved in the enterprise, but not suggesting a balance of power or control in favor of Sadler. The prosecutor, in the statements referenced by defendant, was simply explaining the evidence and asserting defendant's incorrect interpretation or explanation regarding the possession of the drugs and weapon.

Further, a defendant is not entitled to an instruction on mere presence where the defendant's theory and evidence does not support an inference that the defendant was simply

present during the commission of the crime. See *People v Moldenhauer*, 210 Mich App 158, 160; 533 NW2d 9 (1995). Other than the testimony of Heard, the evidence did not support defendant's contention of mere presence to support the provision of the requested instruction to the jury. Evidence showed that defendant owned the property where the contraband was found and that items linked to defendant were located with the contraband within the home. The evidence indicated that defendant, Heard and Sadler had keys to the property but that the personal items in the room where the closet containing the contraband was situated, were linked to defendant and that no such evidence was produced to support defendant's contention that Sadler was living in the room and had control of it, other than the testimony of Heard. Because defendant's theory at trial was contradicted by the evidence, the trial court did not abuse its discretion in concluding that the "mere presence" instruction was not applicable. *Id.* "A trial court need not give requested instructions that the facts do not warrant." *People v Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997).

Even if, as argued by defendant, the evidence supported the provision of the instruction, the jury instructions as a whole were not erroneous because they fairly presented the issues to be tried and defendant's theory of the case and protected defendant's rights. See *Piper,* 223 Mich App at 648. As previously recognized by this Court:

> This Court reviews jury instructions in their entirety to determine whether the trial court committed error requiring reversal. Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them. Jury instructions must be read as a whole rather than extracted piecemeal to establish error. Even if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights. Error does not result from the omission of an instruction if the charge as a whole covers the substance of the omitted instruction. [*Id.* (citations omitted).]

The trial court provided the jury with an instruction on possession, sufficient to encompass defendant's theory of the case and protect his rights. Because the jury instructions sufficiently protected defendant's rights and fairly presented the issues to the jury, reversal is not necessary even if it were to be determined that the trial court should have provided the jury with the instruction on mere presence. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

Finally, defendant argues that he was deprived of the effective assistance of counsel based on allegations that counsel failed to communicate a plea offer by the prosecutor to defendant and rejected the proffered plea deal without having discussed the offer with defendant. Defendant asserts he would have accepted the plea offer, despite his ongoing assertions of innocence. He also contests the trial court's factual determinations pertaining to the credibility of the witnesses in denying his entitlement to a new trial following the conclusion of a *Ginther*[2] hearing after remand by this Court.

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

"A claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id*. A finding is determined to be clearly erroneous if " 'the reviewing court is left with a definite and firm conviction that a mistake has been made.' " *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014) (citation omitted).

The effective assistance of counsel is presumed, and the burden is placed on defendant to establish the contrary. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant is required to demonstrate that: (1) the representation afforded by counsel fell below an objective standard of reasonableness, and (2) but for the unprofessional errors of counsel, the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). When a defendant asserts that the ineffective assistance of counsel resulted in the rejection of a plea bargain, a defendant must demonstrate that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.* at 592, quoting *Lafler v Cooper*, 566 US ___; 132 S Ct 1376, 1385; 182 L Ed 2d 398 (2012).]

A claim of ineffective assistance of counsel premised on the failure of trial counsel to provide proper advice during plea negotiations is subject to the same two-prong analysis as is any other ineffective assistance of counsel claim; namely, the defendant must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced defendant. *Douglas*, 496 Mich at 591-592 (citations omitted). See *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

On remand to the trial court a *Ginther* hearing was conducted. Defendant's trial attorney, Randall Upshaw, testified that he engaged in ongoing plea negotiations with the prosecutor in trying to procure a more advantageous offer, which the prosecutor, Sarah DeYoung, corroborated through her indication that the dogged persistence of defense counsel caused her to be "frustrated." In addition, the prosecutor concurred with defense counsel that the plea offer was never withdrawn and that defense counsel never officially declined the offer. Defense counsel further asserted, under oath, that he did communicate the offer made by the prosecutor, which never varied, to defendant, who elected to reject the offer because he wanted a more advantageous deal commensurate with that received by Sadler.

To contradict this testimony, defendant asserted that only once did defense counsel inform him of a plea offer by the prosecutor and that it was communicated after defense counsel had rejected the offer without consulting defendant. Defendant further denied any indication or explanation by defense counsel that the plea offer remained open or that defendant could indicate his preference to accept the plea. Defendant acknowledged that he never indicated to his counsel that he would have wanted to accept the plea offered, but insists he would have taken the plea despite his protestations of innocence to the charges. In support of his contentions, defendant proffered the testimony of his sister, Nicole Smith, and his girlfriend, Michelle Sherrill, regarding part of a conversation they overheard between defendant and his trial counsel, regarding a plea offer. As noted by the trial court in denying defendant's request for a new trial premised on the ineffective assistance of counsel, the testimony of these individuals provided mere snapshots of one conversation and did not serve to contradict testimony by Upshaw or the prosecutor that several other conversations regarding a plea offer occurred. In addition, Sherrill's testimony did not indicate that defense counsel had rejected the plea offer. While Smith asserted that defense counsel indicated he was rejecting the plea offer because it was "too much time," she also testified that defendant did not indicate he would accept or wanted the plea.

The dispute comprised one contingent on credibility. This Court defers to the trier of fact's determinations regarding the credibility of witnesses, *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008), and will not second-guess or "interfere with the trier of fact's role of determining the weight of the evidence o[r] the credibility of witnesses." *Kanaan*, 278 Mich App at 619. In making its credibility determinations, the trial court found it to be significant that defendant was willing to commit perjury by acknowledging under oath the factual predicates for the criminal charges while commensurately asserting his innocence to the same charges.

In addition to presenting an issue regarding credibility, although defendant now, in hindsight, asserts he would have accepted the plea offer, such a contention is highly suspect given his continued and ongoing assertions of innocence. As such, defendant cannot establish the requisite prejudice because "the record amply supports the conclusion that, even had the defendant been properly advised . . ., it was not reasonably probable that he would have accepted the prosecution's plea offer" because defendant continued to assert his innocence on an ongoing basis throughout the proceedings and never appeared to consider the possibility of accepting a plea. *Douglas*, 496 Mich at 598. Defendant has failed to demonstrate that "but for the ineffective advice of counsel there is a reasonable probability that . . . [he] would have accepted the plea . . . ." *Id.* at 592. Similarly, there has been no evidence proffered, or even a suggestion made, that the trial court would have accepted the plea deal as offered. Defendant's claim of ineffective assistance of counsel, therefore, lacks merit.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto