PEOPLE v SOBCZAK-OBETTS

Docket No. 236963. Submitted June 5, 2002, at Grand Rapids. Decided September 20, 2002, at 9:05 A.M. Leave to appeal denied, 467 Mich 914.

Michelle A. Sobczak-Obetts, charged in the Kent Circuit Court as a fourth-offense habitual offender with possession of a firearm by a convicted felon, moved for the suppression of evidence of two handguns found in a safe in her house during the execution by state and federal law enforcement officers of a search warrant issued by a federal court magistrate on allegations that the defendant and her husband had committed insurance and bank fraud related to their business, Pro Temp One, Inc. The court, Donald A. Johnston, J., granted the motion, ruling that MCL 780.654 entitled the defendant to a copy of the affidavit that supported the warrant, but no copy of the affidavit was provided to her. The Court of Appeals, HOEKSTRA, J., and CAVANAGH, P.J. (GAGE, J., dissenting), affirmed the trial court's decision. 238 Mich App 495 (1999). The Supreme Court reversed, holding that the evidence should not have been suppressed and the case should not have been dismissed for a violation of the procedural requirements of MCL 780.655. The Supreme Court remanded the matter to the trial court so that the trial court could address issues that were not disposed of in the trial court's opinion. 463 Mich 687 (2001). On remand, the trial court again granted the defendant's motion to suppress, ruling that although an averment of credibility and reliability of the unnamed sources in the affidavit was required by MCL 780.653, none was provided; the warrant was not supported by probable cause because there was insufficient information to conclude that any business records would be found at the defendant's house; and the information in the affidavit was stale. The prosecution appealed by leave granted.

The Court of Appeals *held*:

1. The trial court did not err in applying a state statutory requirement to a search warrant issued by a federal magistrate. Under the "joint activity" rule, state law governs the validity of a search warrant executed in a joint operation by state and federal authorities where the warrant is challenged in state court.

2. The trial court exceeded the scope of the remand order of the Supreme Court in ruling that the affidavit failed to comply with the requirement of MCL 780.653 that there be averments of the credibility and reliability of the unnamed sources. The trial court had earlier ruled to the contrary regarding this issue, and neither party appealed that earlier ruling. The trial court's later ruling must be set aside.

3. The trial court erred in concluding that probable cause to search the defendant's house was lacking and that the information in the affidavit was stale. There was a fair probability that evidence of a crime would be found at the defendant's house. All three unnamed sources averred that the defendant maintained a computer-equipped office at her house, two sources averred that Pro Temp One's business records were kept on a computer system and were backed up regularly on disks, two sources averred that they had observed the defendant place back-up disks from Pro Temp One in her briefcase and remove them from the premises, and one source averred having seen Pro Temp One back-up disks and business records at the defendant's house. The fact that the affidavit did not contain specific dates was not fatal to the establishment of probable cause.

Reversed and remanded.

JANSEN, P.J., concurring in part and dissenting in part, stated that the validity of the search warrant at issue is governed by state law, but the trial court's ruling to suppress evidence of the handguns seized pursuant to the search warrant should be affirmed on the basis that the warrant was not supported by probable cause because the information contained in the affidavit was stale. Given the absence of relevant dates in the affidavit and the portable and modifiable nature of computer data, the information in the affidavit was stale at the time the search warrant was issued.

1. SEARCHES AND SEIZURES — SEARCH WARRANTS — JOINT ACTIVITY RULE.

The validity of a search warrant issued by a federal court magistrate, executed in a joint operation by state and federal authorities, and challenged in state court is governed by state law.

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — APPELLATE REVIEW.

A threshold inquiry in reviewing a magistrate's finding of probable cause to issue a search warrant involves the life cycle of the evidence sought given the totality of the circumstances, including the criminal, the thing to be seized, the place to be searched, and, most significantly, the character of the criminal activities under investigation; it cannot be assumed that evidence of a crime will remain

indefinitely in a given place, and time as a factor must be balanced with variables such as whether the crime was a single instance or part of an ongoing pattern, whether the inherent nature of a scheme suggests that it probably is continuing, and whether the property sought likely would be disposed of or retained by the person committing the offense.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Chief Appellate Attorney, for the people.

*Jeffrey P. Kirchhoff* for the defendant.

Before: JANSEN, P.J., and SMOLENSKI and WILDER, JJ.

SMOLENSKI, J. In this interlocutory appeal, the prosecutor appeals by leave granted from the trial court's order granting defendant's motion to suppress the evidence of two handguns seized pursuant to a federal search warrant. We reverse and remand.

Defendant and her husband, Timothy Obetts, were co-owners of Pro Temp One, Inc., doing business as First Agency Professionals, a corporation that provided skilled and semiskilled health care workers to hospitals, nursing homes, and private residences. In May 1997, several of the employees at Pro Temp One were fired, and in that same month the Michigan Accident Fund, Pro Temp One's worker's compensation carrier, received an anonymous telephone call indicating that defendant and Obetts had misrepresented worker's compensation employee classifications to the fund. An investigator from the fund conducted further investigation into the matter and later contacted the Michigan State Police.

The State Police began a criminal investigation and later contacted the Federal Bureau of Investigation

because of further allegations that defendant and Obetts had obtained a bank loan fraudulently to purchase their home. Some time after the employees had been fired, they went to work for a direct competitor of Pro Temp One. In August 1997, Pro Temp One brought an action against the former employees for violation of a noncompetition agreement. Further, defendant brought a defamation suit against one of the former employees.

Special Agent David Smith of the FBI interviewed two of the former employees and a friend of defendant and, as a result of the interviews, sought and obtained a federal search warrant to search defendant's house, which warrant was issued on October 30, 1997. Smith's affidavit in support of the search warrant did not name the sources, but simply referred to them as "Source One," "Source Two," and "Source Three." On the same day, the federal magistrate also issued a search warrant for Pro Temp One. Both search warrants were executed by federal and state officers on October 31, 1997. During the search of defendant's residence, two FBI agents discovered a locked safe. The police seized business records and also confiscated two handguns found in the safe in defendant's house.[1]

On January 12, 1998, the Kent County Prosecutor issued a felony complaint charging defendant as a fourth-offense habitual offender, MCL 769.12, with possession of a firearm by a person convicted of a

---

[1] The search warrant did not specify any weapons to be seized from defendant's residence. The handguns were found during the search for business records.

felony, MCL 750.224f.[2] Defendant was never charged
with any federal offense. On January 29, 1998, defen-
dant requested a copy of the search warrant affidavit
under MCR 6.201(B)(4), but it was not provided
because the federal magistrate had ordered it to be
sealed. The preliminary examination was conducted
on February 24, 1998, and defendant again requested
a copy of the affidavit. About two weeks after the
preliminary examination, the affidavit was provided
to defendant, and she was formally bound over on
March 11, 1998.

Defendant subsequently moved to suppress the
handguns seized from her house and an evidentiary
hearing was conducted on July 29, 1998, and Septem-
ber 9, 1998. Defendant contended that the search war-
rant was not supported by probable cause because
the affidavit contained material omissions and failed
to sufficiently show probable cause in general, the
seizure of the handguns exceeded the scope of the
warrant, the police failed to comply with certain stat-
utory mandates regarding the execution of the war-
rant, and the warrant was issued on stale information.
The trial court concluded that the affidavit did not
contain material omissions and contained sufficient
averments regarding the reliability of the information.
However, it granted the motion to suppress, finding
that defendant had not been provided with a copy of
the affidavit at the time of the search in contravention
of MCL 780.654. The trial court did not rule on the
other arguments at the time, but dismissed the
charges after granting the motion to suppress.

---

[2] Defendant's prior convictions were larceny over $100 in 1980, receiv-
ing and concealing stolen property in excess of $100 in 1987, and attempt-
ing to obtain a controlled substance by fraud in 1995.

The prosecutor appealed to this Court, and ·a divided panel affirmed the trial court's decision. 238 Mich App 495; 606 NW2d 658 (1999). The prosecutor then sought and was granted leave to appeal in our Supreme Court. The Supreme Court reversed, holding that the evidence should not have been suppressed for a violation of the procedural requirements of MCL 780.655.[3] 463 Mich 687; 625 NW2d 764 (2001). The Court remanded the matter to the trial court so that the trial court could address any grounds that were not disposed of in the trial court's opinion of September 9, 1998. *Id.* at 713, n 20.

On remand, the trial court again granted defendant's motion to suppress at a hearing held on August 10, 2001. The trial court ruled that (1) there was no averment of credibility and reliability of the unnamed sources in the affidavit as required by MCL 780.653, (2) the warrant was not supported by probable cause because there was insufficient information to conclude that any business records would be found at defendant's house, and (3) the information in the affidavit was stale. The trial court's order was entered on September 12, 2001. The prosecutor sought leave to appeal in this Court, which was granted in an unpublished order entered on November 2, 2001.

The prosecutor argues that the trial court erred in suppressing the evidence because the court improperly applied a state statutory standard to a federal search warrant, improperly substituted its judgment for that of the magistrate in ruling that the warrant

---

[3] The Court noted that defendant's argument was that MCL 780.655, by reference to MCL 780.654, required that a copy of the affidavit in support of the search warrant be left at her residence after the search was completed.

was not supported by probable cause, improperly determined that the information supporting the warrant was stale, and applied the "good-faith" exception to the exclusionary rule to preclude suppression of the evidence. We review for clear error the trial court's ruling regarding the motion to suppress. *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999). Application of uncontested facts to constitutional standards is not entitled to the same deference as factual findings, however, and such questions of law are reviewed de novo. *Id.*

I

The prosecutor first argues that the trial court erred in applying a state statutory requirement to a federal warrant issued by a federal magistrate. The issue involves the "joint activity" rule, which states that "in a joint operation between the state and federal government, state law governs the validity of a search warrant in a state court." 238 Mich App 498-499, citing *People v Paladino*, 204 Mich App 505, 507-508; 516 NW2d 113 (1994).[4] Before remand, the prosecutor had conceded that state law governed the validity of the search. The prosecutor now asserts that state law does not apply to the federal warrant

---

[4] We note that *Paladino*'s reference to this rule was in dicta and cited *People v Pipok (After Remand)*, 191 Mich App 669, 670; 479 NW2d 359 (1991). *Pipok's* recitation of this rule was also dicta. The original enunciation of the rule was in *People v Pipok*, unpublished opinion per curiam of the Court of Appeals, issued March 7, 1991 (Docket No. 126052). That Court reviewed several federal cases and found the reasoning persuasive, holding that "in order to preserve state integrity and to govern the conduct of state officers that where evidence challenged in a state prosecution is obtained though joint activity of state and federal officers, the search is tested under state standards." *Id.*

because of our Supreme Court's statements in 463 Mich 687.

When this case was before the Supreme Court, the Court noted its disapproval of the joint activity rule. The Supreme Court specifically declined to address the issue whether state or federal search warrant standards applied, instead stating:

Because we hold that the statutory violation at issue in this case does not require suppression of evidence in any event, we need not address the propriety of the "joint activity" rule enunciated by the Court of Appeals. Nevertheless, we take this opportunity to note our disapproval of the dicta in *Pipok* and *Paladino* suggesting that state warrant requirements apply to joint federal and state execution of federal warrants. Michigan statutory provisions governing issuance and execution of search warrants, on their face, and as a matter of the legislative power of this state, address *only* search warrants (which are judicial orders) issued by judicial officers of Michigan. See United States Const, art VI, cl 2 ("The [sic] Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"); Const 1963, art 4, § 1 ("The legislative power *of the State of Michigan* is vested in a senate and a house of representatives). . . . The United States of America is a sovereign entity; it does not require officers to provide an affidavit underlying a federal warrant following execution. 463 Mich 700-701, n 12 (emphasis in original).][5]

---

[5] Justice WEAVER concurred because she believed that the Court should have addressed the issue whether state warrant requirements should be applied to a federal search warrant executed during a search conducted jointly by federal and state authorities. 463 Mich 713. Justice WEAVER also stated that "the state warrant requirements should not apply in this situation." *Id.* It is unclear whether she was expressing disagreement with the joint activity rule per se or just as it applied to the facts of this case.

The prosecutor incorrectly argues that the Supreme Court in *Sobczak-Obetts* held that state warrant requirements were not to be applied to federal warrants, and that we are bound by the Court's decision. The Court specifically stated that it was not addressing the propriety of the joint activity rule given its holding. Therefore, the Court's commentary was clearly dicta and, as such, has no precedential value. *Chevron, Inc v Don Jones, Inc*, 244 Mich App 212, 216; 625 NW2d 93 (2000).

Because this Court's pronouncement of the joint activity rule in *Sobczak-Obetts, supra*, 238 Mich App 495, is binding precedent under the rule of stare decisis, we are not at liberty to revisit the issue.[6] MCR 7.215(C)(2). Were we allowed to address the issue, we would affirm the joint activity rule, finding persuasive the reasoning delineated in many state and federal cases that have decided the issue.[7] We invite the Supreme Court to take up this issue if it desires Michigan to follow a different rule.

Our only determination regarding this issue would have been whether there was in fact "joint activity." However, the prosecutor conceded that the search was a joint operation between state and federal officers and does not argue otherwise on appeal. Therefore, review of this issue has been waived.

---

[6] The issue on that appeal was whether the trial court erred in granting the defendant's motion to suppress because the search warrant did not comply with MCL 780.654. *Id.* at 498. Thus, as a preliminary matter, a determination of which standards applied, state or federal, was necessary.

[7] See *United States v Shoenheit*, 856 F2d 74 (CA 8, 1988); *United States v Crawford*, 657 F2d 1041 (CA 9, 1981); *United States v Gibbons*, 607 F2d 1320 (CA 10, 1979); *State v Johnson*, 75 Wash App 692; 879 P2d 984 (1994); *State v Hudson*, 849 SW2d 309 (Tenn, 1993); *State v Toone*, 823 SW2d 744 (Tex App, 1992); *State v Mollica*, 114 NJ 329; 554 A2d 1315 (1989).

II

After remand, applying state warrant requirements to the search warrant in this case, the trial court stated that there was no averment of reliability and therefore the affidavit failed to comply with Michigan law, presumably referring to MCL 780.653. However, the grant of defendant's motion to suppress cannot be supported on this ground.

The remand instructions from the Supreme Court were for the trial court to address any grounds raised in support of defendant's motion to suppress that were not previously disposed of. 436 Mich 713, n 20. Before remand, the trial court stated that there had been a challenge under Michigan law regarding the reliability of the information in the affidavit. Defendant had argued that the affidavit contained material omissions that, had they been known by the magistrate who issued the warrant, would have cast a doubt with respect to the credibility of the unnamed informants and the reliability of the information they provided. Noting that there were "legitimate attacks to be made on the integrity of the affidavit" on the basis of the possible motive of the informants, given that they had been fired by defendant and were involved in civil litigation with defendant, the trial court concluded that the affiant had not intentionally omitted this information. Acknowledging that the information undermined the strength of the affidavit, the trial court held that it was not enough to "oust or overthrow" the affidavit and there were sufficient averments in the affidavit regarding the reliability of the information.

After remand, for some inexplicable reason, the trial court again addressed this question. By revisiting the issue of the affidavit's compliance with MCL 780.653, the trial court exceeded the scope of review as directed by the Supreme Court. Neither party appealed the trial court's first ruling. Because compliance with MCL 780.653 was not properly before the trial court after remand, we need not address the trial court's contrary ruling on appeal, and the order addressing it must be set aside. *Mitchell v Cole (After Remand)*, 196 Mich App 675, 679; 493 NW2d 427 (1992).

III

The prosecution also argues that the trial court incorrectly determined that the information supporting the search warrant was stale and that probable cause to search defendant's residence did not exist. We agree. Our Supreme Court enunciated Michigan's standard regarding matters of staleness and probable cause in *People v Russo*, 439 Mich 584; 487 NW2d 698 (1992). Appellate review of a magistrate's probable cause determination requires this Court to ask "whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause."[8] *Id.* at 603. Affording due deference to the magistrate's conclusion, this Court must simply ensure that "there is a 'fair probability'

---

[8] The prosecutor contends that the trial court engaged in a review de novo of the search warrant and affidavit. However, it is apparent from the record that the trial court recognized that this was not the standard of review. Regardless of whether the trial court observed the proper standard of review, the issue is moot because we find that the warrant was supported by probable cause.

that contraband or evidence of a crime will be found
in a particular place." *Id.* at 604, quoting *Illinois v
Gates,* 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527
(1983).

> The threshold inquiry looks at the life cycle of the evi-
> dence sought, given a totality of circumstances, that
> includes the criminal, the thing seized, the place to be
> searched, and, most significantly, the character of the crimi-
> nal activities under investigation.
>
> Probable cause to search is concerned with whether cer-
> tain identifiable objects 'are probably to be found at the
> present time in a certain identifiable place.' Once estab-
> lished, probable cause to arrest, which is concerned with
> historical facts, is likely to continue indefinitely, absent the
> discovery of contrary facts. By contrast, it cannot be
> assumed that evidence of a crime will remain indefinitely in
> a given place. Thus, "staleness" is not a separate doctrine in
> probable cause to search analysis. It is merely an aspect of
> the Fourth Amendment inquiry.
>
> Time as a factor in the determination of probable cause
> to search is weighed and balanced in light of other vari-
> ables in the equation, such as whether the crime is a single
> instance or an ongoing pattern of protracted violations,
> whether the inherent nature of a scheme suggests that it is
> probably continuing, and the nature of the property sought,
> that is, whether it is likely to be promptly disposed of or
> retained by the person committing the offense. [*Russo,*
> *supra* at 605-606 (citations omitted).]

The trial court concluded that the warrant "was
particularly thin on the issue of probable cause," not-
ing that the affidavit contained "very little to allow a
reasonable and detached magistrate to conclude that
such evidence would be found at the defendant's
home." The trial court also stated that the information
in the affidavit was "extremely dated," and concluded
that there was no reason to believe that the evidence

would still be at defendant's home on the date the
search warrant was issued. Therefore, the trial court
held that the affidavit failed the probable cause test.

Reading the affidavit as a whole in a commonsense
and realistic manner and giving due deference to the
magistrate, we believe that the trial court's conclusion
was incorrect. In the affidavit, two informants stated
that Pro Temp One's business records were kept on a
computer system and were backed up regularly on
disks. All the informants indicated that defendant
maintained an office at her home, which had a com-
puter system with a hard drive and modem. Two
informants had observed defendant place the back-up
disks from Pro Temp One in her briefcase and
remove them from the premises. One informant per-
sonally observed these disks and paper copies of Pro
Temp One business records at defendant's residence,
although the informant did not specify when.[9]

However, we do not believe the fact that the affida-
vit did not contain any specific dates was fatal to the
establishment of probable cause.[10] The affidavit indi-
cated that defendant and Obetts had engaged in their
fraudulent activities for at least two years, using the
Pro Temp One computer system, to which defendant
had access from her home computer, to electronically
make changes to databases, records, and accounts for
both professional and personal gain. Given that so
many of these records related to personal acquisitions

    [9] This averment was contained in paragraph 30 of the affidavit, which
the trial court must have misread because it stated that the affidavit did
not "say where Source Three observed the disks, whether they were
observed at the residence of the defendant or at the office."
    [10] It appears that the information in the affidavit was at least six
months old, given that the informants last had contact with defendant in
May 1997.

and that records of this type are generally kept for long periods, it was reasonable to infer that at least some of these records would still be at defendant's home.

In concluding that the information was stale, the concurring in part and dissenting in part opinion notes that the computer disks are portable and that computer information is easily modifiable. However, the test is not whether the items could be moved or changed, but whether there was a "fair probability" that the items were in the place to be searched. If defendant took the disks home, presumably for safekeeping, we believe there was a "fair probability" that they were not moved. There was no indication that defendant knew that the authorities were aware of her fraudulent activities and, therefore, no reason to believe she would delete or modify any computer records at her home.

Even if defendant did attempt to delete business records from her hard drive or the computer disks, these records would not necessarily be permanently irretrievable. Skilled personnel are capable of retrieving information that a lay person thought was deleted. Such technicians are presumably employed by either the federal or state authorities who executed this search. Therefore, giving deference to the magistrate's conclusion, we hold that there was a substantial basis for the magistrate to determine there was probable cause that business papers and computer disks would be found at defendant's home. Consequently, we need not address the prosecutor's final argument regarding the applicability of the "good-faith exception" to the exclusionary rule.

In conclusion, we hold that the trial court properly applied state warrant requirements to the federal warrant, but erred in concluding that the search was not supported by probable cause in general and that the information in the affidavit was stale. Also, the court exceeded its jurisdiction when it determined that the affidavit violated MCL 780.653. Accordingly, we reverse the trial court's grant of defendant's motion to suppress and remand this case for proceedings consistent with this opinion.[11]

Reversed and remanded. We do not retain jurisdiction.

WILDER, J., concurred.

JANSEN, P.J. (*concurring in part and dissenting in part*). I agree with the majority with respect to the resolution concerning whether the search warrant is governed by state or federal law as set forth in part I of its decision. I respectfully disagree with respect to the staleness issue and would affirm the trial court's ruling that the search warrant was stale and that probable cause to search defendant's residence, therefore, was lacking.

With regard to the matters of staleness and probable cause, the state and federal standards are the same. In this regard, the trial court correctly applied the standard set forth in *People v Russo*, 439 Mich 584; 487 NW2d 698 (1992), which adopted the standard of review set forth in *Illinois v Gates*, 462 US 213; 103 S Ct 2317; 786 L Ed 2d 527 (1983).

---

[11] We note that it does not appear that the trial court ruled on defendant's argument in support of her motion to suppress regarding the search exceeding the scope of the warrant.

[A]ppellate scrutiny of a magistrate's decision involves neither de novo review nor application of an abuse of discretion standard. Rather, the preference for warrants . . . requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a "substantial basis" for the finding of probable cause.

\*      \*      \*

In sum, a search warrant and the underlying affidavit are to be read in a common-sense and realistic manner. Affording deference to the magistrate's decision simply requires that reviewing courts ensure that there is a substantial basis for the magistrate's conclusion that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates* at 238. [*Russo, supra* at 603-604.]

As stated in *Russo, supra* at 605, staleness is not a separate doctrine regarding probable cause to search analysis, but is an aspect of the Fourth Amendment inquiry regarding whether probable cause exists to support issuance of the search warrant. "Probable cause to search is concerned with whether certain identifiable objects 'are probably to be found at the present time in a certain identifiable place.'" *Id.*, quoting 2 LaFave, Search and Seizure (2d ed), § 3.7, p 75.

The threshold inquiry looks at the life cycle of the evidence sought, given a totality of the circumstances, that includes the criminal, the thing seized, the place to be searched, and, most significantly, the character of the criminal activities under investigation. . . .

\*      \*      \*

Time as a factor in the determination of probable cause to search is weighed and balanced in light of other variables in the equation, such as whether the crime is a single

instance or an ongoing pattern of protracted violations,
whether the inherent nature of a scheme suggests that it is
probably continuing, and the nature of the property sought,
that is, whether it is likely to be promptly disposed of or
retained by the person committing the offense. . . . The mat-
ter must be determined by the circumstances of each case.
[*Russo, supra* at 605-606.]

I agree with the trial court that the information
contained in the affidavit was stale. Here, the warrant
specified that the items to be seized were all business
records relating to Pro Temp One, and financial
records relating to the bank loan that was allegedly
obtained by fraud. The paragraphs in the affidavit
relating to any business or financial records kept at
defendant's home are numbered twenty-nine and
thirty. The affidavit avers that there is a computer sys-
tem at the office of Pro Temp One and that defendant
and Obetts maintained an office in their residence.
The affidavit avers that defendant and Obetts "have
utilized this home computer to access the records
maintained in the computer system of Pro Temp
One"; however, the affidavit provides no dates what-
soever regarding when this might have occurred or
whether it was even ongoing. Further, the affidavit
avers that defendant had put back-up disks from the
office computer system into her briefcase, removed
those disks from the office, and that "Source Three"
had seen the disks and paper copies of Pro Temp One
business records at defendant's residence. Again,
however, there are no dates whatsoever regarding
when those computer disks or other records were
removed from the office or when they were seen at
defendant's residence. There is simply no time frame
whatsoever regarding when the business records and

computer disks were taken to, or actually were in, defendant's house.

As aptly noted by the trial court, the business records are "highly portable and likely to be moved from place to place," as indicated by the affidavit itself. Moreover, information contained in computers and on computer disks is not necessarily permanent because information is constantly being modified or deleted in computers and disks. Additionally, about six months had passed from the time that the sources had been discharged from their jobs until the warrant was issued. Considering the portable and easily modifiable nature of the items being sought, in conjunction with the fact that there is simply no time frame regarding *when* the computer disks and records were removed from the office to defendant's home, the information in the affidavit was stale at the time the search warrant was issued. Indeed, as stated by the trial court, "the fact that [a computer disk] may be in one location one day is no basis for believing it will be in that location days later, let alone six months or more later."

I would affirm the trial court's ruling to suppress the evidence of the handguns seized pursuant to a warrant that is not supported by probable cause.