*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS EUGENE RUSSELL-TAYLOR,

        Defendant-Appellant.

UNPUBLISHED
June 13, 2019

No. 340029
Wayne Circuit Court
LC No. 17-003077-01-FC

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of armed robbery, MCL 750.529, felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a concealed weapon, MCL 750.227, and two counts of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. We affirm.

## I. FACTS

After responding to an advertisement on Craigslist, defendant arranged to meet the complainant in a parking lot to sell him two cell phones. At the parking lot, defendant, who was carrying a white plastic bag with a "Sprint" logo and driving a black four-door vehicle with tinted windows, got into the passenger side of the complainant's car. Defendant then pulled out a black gun, pointed it at the complainant, and took money and other items from the complainant, including the complainant's business cell phone. The complainant called the police from his personal cell phone, and when officers arrived, the complainant gave them defendant's phone number. Using this information, the police were able to track defendant and determine his general location, and eventually spotted a car matching the description of defendant's car. The car was in a motel parking lot, and officers observed defendant remove a white "Sprint" bag from the vehicle. The police followed defendant away from the motel, but lost sight of him after he walked into a strip mall still carrying the "Sprint" bag.

The following day, the complainant picked defendant out of a photographic lineup. The police eventually learned that defendant was staying with his girlfriend and, after verifying this

information, obtained a search warrant for the premises. During the search that followed, the police found a black gun that was later determined to have DNA on the grip that matched defendant's DNA.

## II. INEFFECTIVE ASSISTANCE AND ADMISSION OF THE GUN

Defendant first argues that his trial counsel provided ineffective assistance by not moving to exclude evidence of the gun by challenging (1) the search warrant or (2) the gun's relevance. We disagree.

"Whether the defendant received the effective assistance of counsel guaranteed him under the United States and Michigan Constitutions is a mixed question of fact and law." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). When examining a defendant's claim of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017). But because the trial court denied defendant's motion for a new trial or evidentiary hearing, our review is limited to mistakes apparent on the record. *People v Ullah*, 216 Mich App 669, 684; 550 NW2d 568 (1996).

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and the defendant bears the burden of proving otherwise, *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). Counsel's performance cannot be judged with the "benefit of hindsight." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

## A. CHALLENGE TO THE SEARCH WARRANT

We first address defendant's argument that trial counsel should have objected to the search warrant. The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures, and provides that no warrants shall issue without probable cause. US Const, Am IV. Michigan's Constitution contains substantially the same provision, see Const 1963, art 1, § 11, which has been construed as coextensive with its federal counterpart, *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). The exclusionary rule, with several exceptions, bars evidence obtained during an unconstitutional search. *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003).

A magistrate may issue a search warrant when it is supported by probable cause. *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001). " 'Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched.' " *Id*. at 509, quoting *People v Brannon*, 194 Mich App 121, 132; 486 NW2d 83 (1992). The magistrate's findings must be based on "all the facts related within the affidavit" that are "within the knowledge of the affiant rather than mere conclusions or beliefs."

*Ulman*, 244 Mich App at 509.  "[T]he affiant's experience is relevant to the establishment of probable cause."  *Id*. at 509.

The magistrate here signed the warrant based on the affidavit of Dearborn Police Sergeant Jamison Carpenter.  The affidavit provided the complainant's statement that defendant called him to arrange a meeting for the purchase of phones, and that when they met, defendant pointed a gun at him and took his car keys, phone, and $600 to $700.  The affidavit further provided that the complainant gave officers a description of defendant, the clothes he was wearing, and his vehicle, as well as defendant's phone number.  The affidavit set forth the steps that the officers followed to locate defendant: they found defendant's location using GPS data from defendant's phone, used the location to find a vehicle that matched the description given by the complainant, and eventually spotted defendant—at the motel where the vehicle was parked—with a white bag matching one that the complainant had seen defendant with during the robbery.  An unidentified female eventually drove the car from the motel, and officers followed.  Officers later stopped the car, and the female identified herself as defendant's girlfriend.  During the ensuing investigation, officers were informed that defendant was staying at an address on Santa Rosa Drive in Detroit.  When officers conducted a check of defendant's girlfriend, her address was listed as the Santa Rosa Drive address.  Officers also ran a check for defendant's name, as provided by defendant's girlfriend, and confirmed by his license photograph that he matched the description provided by the complainant and was the man that officers had followed earlier.  The complainant also identified defendant as his assailant in a photographic lineup.  The affidavit also provided that defendant's probation and credit records listed his address as the Santa Rosa Drive address.  Officers searched the motel room where the vehicle was originally seen, but were unable to find any evidence.  Officers then observed the Santa Rosa Drive address and saw defendant arrive at the Santa Rosa Drive address in the same vehicle described by the complainant, go inside the residence, then go back to the vehicle and retrieve a backpack, which defendant took into the residence.  The affidavit ended with Sergeant Carpenter stating his belief that defendant was "currently residing at" the Santa Rosa Drive address, and that, based on Sergeant Carpenter's experience, "criminals involved in armed robbery will commonly keep evidence of the crime in their places of residence," and that a search of the residence would reveal certain evidence of the armed robbery, including "clothing worn during the commission, weapons involved, [and] property obtained from the robbery[.]"  Based on this affidavit, the magistrate issued a warrant permitting the police to search the Santa Rosa Drive address for items allegedly stolen from the complainant, as well as any items believed to be involved in the armed robbery.

"In reviewing a magistrate's decision to issue a search warrant, this Court must evaluate the search warrant and underlying affidavit in a common-sense and realistic manner." *People v Poole*, 218 Mich App 702, 705; 555 NW2d 485 (1996).  "This Court must then determine whether a reasonably cautious person could have concluded, under the totality of the circumstances, that there was a substantial basis for the magistrate's finding of probable cause." *Id*., citing *People v Sloan*, 450 Mich 160, 168; 538 NW2d 380 (1995).  The magistrate's conclusion is entitled to deference, and "this Court must simply ensure that 'there is a fair probability' that contraband or evidence of a crime will be found in a particular place." *People v Sobczak-Obetts*, 253 Mich App 97, 107-108; 654 NW2d 337 (2002).

Defendant argues that there was not probable cause to believe that items involved in the robbery would be found in the Santa Rosa Drive address. That is, he argues that the affidavit did not establish probable cause that items involved in the robbery would be found "in the stated place to be searched." *People v Russo*, 439 Mich 584, 607; 487 NW2d 698 (1992). This argument is unconvincing. The complainant identified defendant as the person who robbed him at gunpoint. The police learned that defendant was staying at the Santa Rosa Drive address during their investigation, and then verified this through multiple databases and direct observation. Within hours of the robbery, defendant was observed carrying a bag from a motel room, but no evidence of the robbery was found in the motel room, suggesting that any evidence had been moved. The following day, defendant was seen entering the Santa Rosa Drive address, where he was believed to be staying, with a backpack. Sergeant Carpenter averred that perpetrators of armed robbery commonly keep items from the robbery at their residence, and the sergeant's experience is relevant to establish probable cause. See *Ulman*, 244 Mich App at 509. Because the evidence reasonably suggested that (1) defendant took items from complainant at gunpoint, (2) no evidence of the items that defendant took from the complainant had been located elsewhere, (3) defendant took a backpack into the Santa Rosa Drive address following the robbery, (4) based on Sergeant Carpenter's experience, perpetrators of armed robbery commonly keep items from the robbery at their residence, and (5) defendant was residing at the Santa Rosa Drive address, a reasonable person would have a substantial basis to conclude that there was a fair probability that defendant transported evidence of the crime into the Santa Rosa Drive address.

Defendant also argues that there was not probable cause because the warrant was stale. "Staleness" is a factor of the probable-cause analysis because "it cannot be assumed that evidence of a crime will remain indefinitely in a given place." *Sobczak-Obetts*, 253 Mich App at 108. "The age of the information" in a warrant's affidavit is "evaluated as part of the particular circumstances of the case" because it is necessary to determine whether the objects of the search "are probably to be found at the present time" in the identified place. *People v Stumpf*, 196 Mich App 218, 226; 492 NW2d 795 (1992), citing *Russo*, 439 Mich at 605-606. Other variables that can be considered besides the timing of the warrant request include "whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of a scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense." *Sobczak-Obetts*, 253 Mich App at 108.

Defendant argues that the warrant was stale because it was executed two days after the robbery, and there were times between the robbery and the execution of the search warrant when officers did not observe defendant, so defendant could have disposed of all of the evidence of the robbery. This argument ignores that the warrant was issued the day following the robbery—the same day that (1) no evidence was located in defendant's motel room where he was seen hours after the robbery and (2) defendant was seen entering his residence with a backpack. Defendant had not been seen leaving the residence after he took the backpack inside. Thus, there is no basis to conclude that the information the warrant relied on was stale; the warrant was issued within hours of defendant's arrival at the residence, defendant had not left the residence since he arrived, and no evidence was found at other locations where defendant had stayed. Because the search warrant was based on probable cause and was not stale, defendant's trial counsel was not ineffective for not challenging the search. See *People v Agar*, 314 Mich App 636, 656-657; 887

-4-

NW2d 662 (2016) (explaining that trial counsel is "not required to file a frivolous or meritless motion").

## B. CHALLENGE TO THE GUN'S RELEVANCE

We next address defendant's argument that trial counsel should have objected to the gun's relevance. Defendant argues that the gun was irrelevant because the complainant did not identify it as the gun that was used to rob him, the DNA expert could not say that defendant actually handled the gun, and no evidence otherwise established that the gun recovered at defendant's residence was the gun used to rob the complainant.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition," evidence that is useful in shedding light on any material point is admissible. *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). To be relevant, "the matter sought to be established by the evidence must be 'in issue.' " *People v McKinney*, 410 Mich 413, 418; 301 NW2d 824 (1981).

Defendant was on trial for (1) using a gun to rob the complainant, (2) felon-in-possession, and (3) carrying a concealed weapon. A gun was an element of every charge. That a gun was found at defendant's residence with defendant's DNA on the grip had a tendency to make it more probable that defendant possessed the firearm. And that the DNA was found on the grip made it more probable that defendant held the firearm by the grip, which is how one would hold a gun to point it at someone else. Thus, the gun was relevant to whether defendant used the gun to rob the complainant, as the complainant testified.

Defendant contends that even if the gun was relevant, it was unfairly prejudicial. Relevant evidence may be excluded under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Watkins*, 491 Mich 450, 477, 481; 818 NW2d 296 (2012). "All relevant evidence is prejudicial," so MRE 403 excludes only evidence that is unfairly so. *People v McGhee*, 268 Mich App 600, 613; 709 NW2d 595 (2005). Evidence is unfairly prejudicial when there is a tendency for the evidence "to be given undue or preemptive weight" by the jury, *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002), or when it goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "bias, sympathy, anger, or shock," *McGhee*, 268 Mich App at 614 (quotation marks and citation omitted).

Defendant argues that the gun was unfairly prejudicial because there was no proof that he used the gun. However, the gun was directly relevant to—and highly probative of—the charges against defendant for the reasons explained. Whether the gun recovered at defendant's residence was the same gun used during the robbery was a question of fact for the jury. While the gun was prejudicial—like all relevant evidence is, see *id.* at 613-614—it was highly probative, and there is no suggestion that it otherwise injected issues broader than defendant's guilt or innocence. Thus, the prejudicial value of the gun did not outweigh its probative value, and it would not have been excluded under MRE 403. Because the gun was relevant under MRE 401 and would not

have been excluded under MRE 403, defendant's trial counsel was not ineffective for not raising these challenges in the lower court. See *Agar*, 314 Mich App at 656-657.

## III. PROSECUTORIAL ERROR

Defendant next argues that the prosecutor engaged in misconduct when she argued in closing that the gun found in the residence was the gun used to rob the complainant because there was no direct evidence establishing this as fact. Defendant failed to preserve this issue by contemporaneously objecting and requesting a curative instruction. See *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016). To warrant relief under this standard, defendant must show that: (1) an error occurred; (2) the error was plain, i.e., clear and obvious; and (3) the plain error affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant's opportunity for a fair trial can be jeopardized when the prosecutor makes a statement of fact to the jury that is unsupported by the evidence. *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). But a prosecutor is nonetheless free to argue the evidence and any reasonable inferences that may arise from the evidence. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

The prosecutor here argued that the jury should convict defendant of felon-in-possession because the gun that the complainant saw while defendant was robbing him was found in defendant's residence, and also argued that if one held the grip of a gun then the person's DNA and skin cells would be on the grip. While arguing that defendant committed armed robbery, the prosecutor asserted that defendant possessed the "black .9 millimeter Ruger handgun that you all saw in court." When summarizing the investigation, the prosecutor remarked, "He was the whole [DNA] pool, ladies and gentlemen. And the reason he was the whole pool is because he is the one who held the gun to [the complainant], and he is the one who possessed the gun."

While defendant is correct that no evidence definitively established that the gun recovered from the residence was the one used to rob the complainant, the prosecutor was permitted to argue reasonable inferences that arise from the evidence that supported her theory of the case. See *id*. There was evidence that defendant pointed a black gun at the complainant during the robbery; a black gun was recovered from defendant's residence two days later; and defendant's DNA was present on the gun's handle. From this evidence, it was reasonable to infer that defendant used the gun found at his residence during the robbery of the complainant. The prosecutor was not limited to presenting her argument in the blandest terms possible, see *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011), and her arguments were

neither unreasonable nor otherwise improper. Because there was no prosecutorial misconduct, this claim of error by defendant does not entitle him to appellate relief.[1]

## IV. COMPETENCY EXAMINATION

Defendant argues that the trial court erred by not ordering a competency evaluation before trial. We disagree.

In *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014), this Court reiterated the standard of review for a trial court's decision to order a competency exam in situations like this case:

> Although the determination of a defendant's competence is within the trial court's discretion, a trial court has the duty of raising the issue of incompetence where facts are brought to its attention which raise a "bona fide doubt" as to the defendant's competence. However, the decision as to the existence of a "bona fide doubt" will only be reversed where there is an abuse of discretion. [Quoting *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990).]

An abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes. *Kammeraad*, 307 Mich App at 140.

A defendant who is incompetent "shall not be proceeded against while he is incompetent." MCL 330.2022(1). A defendant's due process right to a fair trial is violated where there is a failure to "observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial." *Kammeraad*, 307 Mich App at 137, citing *Drope v Missouri*, 420 US 162, 172; 95 S Ct 896; 43 L Ed 2d 103 (1975). "[A] defendant is presumed competent to stand trial unless his mental condition prevents him from understanding the nature and object of the proceedings against him or the court determines he is unable to assist in his defense." *People v Mette*, 243 Mich App 318, 331; 621 NW2d 713 (2000), citing MCL 330.2020. Either the trial court or any party may raise the issue "of a defendant's competence to stand trial." MCL 330.2024.

Here, defendant's original trial counsel was replaced approximately two months before defendant's trial, and on the day after new counsel filed his appearance, he told the trial court that "he was going to ask [it] to refer [defendant] for an evaluation as to competency to stand trial." The trial court asked new counsel the basis for his motion, and counsel responded that it was based on (1) concerns expressed to him by defendant's mother and (2) notes in his bond report "that they have some concerns about his mental health." In reviewing these arguments, the trial court noted that defendant's bond report checked "no" next to "mental health concerns," and that the report noted that defendant's mother stated that defendant was not "diagnosed with

---

[1] Defendant also argues that trial counsel was ineffective for not objecting to the alleged prosecutorial misconduct, but trial counsel was not ineffective for not filing a meritless or futile objection. See *Agar*, 314 Mich App at 656-657.

mental illness [but] she believes he is in need of mental health treatment." Defense counsel responded that people close to defendant believed that "he had a slight alcohol problem that could have been used to help with his mental health," and that the court should defer to the opinions of "people that actually know [defendant]." In ruling on the motion, the court noted that this request was unexpected so it had "not reviewed the criteria that the Court has to consider in determining whether or not to refer a Defendant for an evaluation as to competency." The trial court then ruled as follows:

> There's been no notice of criminal responsibility filed as of yet and which triggers a referral for criminal responsibility and I don't think off the top of my head that simply the -- that the information that's been provided so far necessitates that I refer him for competency.

> . . . . There's been nothing indicated to me that based on the relationships between the lawyers and the Defendant that there's a concern for his competency to stand trial and the lawyers certainly would understand what a competency means more so than the Defendant's mother who may be well meaning and loves her son, what her understanding is as to competency. So I guess, you know, I guess at this time I'll deny the request.

> * * *

> If you feel I've erred and you can show me legally that I erred then I'll reconsider that.

> * * *

> And so based on my understanding of the law I don't believe that you presented sufficient information for me that would necessitate to [sic] my granting the request for a referral as to competency. If I'm wrong by all means I will listen to your presentation of the law and the facts as to why I'm wrong.

Defendant's trial counsel never filed another motion for a competency exam or otherwise argued that the trial court's initial finding was error.

On appeal, defendant makes much of the trial court's statement that it had not reviewed the law before issuing its opinion. Of course, reviewing the law before making a ruling is best practice for any court, but defendant cites no caselaw that the trial court must review the law before making a ruling. And reviewing the substance of the trial court's ruling, we detect no error.

Again, the question on appeal is whether the trial court abused its discretion by finding that no bona fide doubt existed about defendant's competence to stand trial. A "bona fide doubt" exists where "a reasonable judge . . . should have experienced doubt with respect to competency to stand trial." *Kammeraad*, 307 Mich App at 138-139 (quotation marks and citation omitted).

There was no evidence presented that defendant had been diagnosed with a mental illness. Defendant's trial counsel only cited defendant's mother's concern that defendant used

alcohol because of mental health issues as his basis for arguing that defendant was incompetent. While there are a wide range of behaviors that may indicate competency concerns, possible concern about mental health does not, by itself, raise the necessary level of doubt about a defendant's competence. Relevant evidence that could raise issues about a defendant's competency are "irrational behavior, a defendant's demeanor, and a defendant's prior medical record relative to competence," *id*. at 139, none of which were present here. Because there was no evidence that raised a bona fide doubt about defendant's competence, the trial court did not abuse its discretion by denying defendant's motion for a competency examination.

Defendant argues that the trial court should have raised the issue of competency when it was surprised that defendant continued to reject his plea deal before trial, even though the plea deal was generous in light of the evidence. During defendant's exchange with the trial court, he assured the trial court that he was rejecting the plea because he thought that he could win at trial, and that he was aware of the consequences of a conviction. Defendant's behavior was not irrational—he rejected the plea deal because he believed he could walk free. While defendant's gamble did not pay off, his decision did not suggest a lack of understanding of the nature of the charge against him, an inability to communicate with his counsel, or an inability to assist in his own defense. In short, defendant's behavior in rejecting his plea deal did not suggest that he was not competent, and the trial court did not err by not ordering a competency examination.

V. TRIAL JUDGE CONDUCT

Defendant asserts that the trial court made several comments during the complainant's testimony that demonstrated bias. After reviewing the comments, we disagree that the trial court demonstrated bias toward defendant. Because defendant failed to preserve this issue, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

A defendant has a right to a neutral and detached judge. *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*.

The complainant used an interpreter at trial, but did not have an interpreter at the preliminary examination. At trial, the complainant testified that he had arranged to meet defendant in a Kroger parking lot, which was next to a CVS parking lot, and had to move to the CVS parking lot to meet defendant. On cross-examination, defense counsel questioned the complainant about the parking lot, confirming that he met defendant in the CVS parking lot, eliciting a denial that he had told the police that they had arranged to meet at the CVS parking lot, and clarifying that he had reported arranging to meet at Kroger and then moving to CVS. Defense counsel then questioned the complainant about the time of day that he met defendant, and attempted to expose inconsistencies in previous statements. Counsel then returned to questions about which parking lots were involved. The complainant again testified that he went to Kroger because that was where they were initially supposed to meet, and that he moved to the CVS parking lot when defendant informed him that he was there. Trial counsel asked if the

complainant remembered testifying at the preliminary examination, "I call him up. I said I don't see your car. He told me, look, I'm on my way to CVS. He told me first he's by the Kroger side and he moving to the CVS side. I'm on the CVS side." The complainant again explained—twice—that he told defendant that he was on the Kroger side and had to move to the CVS side, and defense counsel asked whether he was in the CVS parking lot when defendant told him to meet in the CVS parking lot. The complainant responded that he was in the Kroger parking lot, and defendant's counsel asked, "So when you testified that I'm on the CVS side, that was wrong?" The prosecutor objected and the complainant responded that he may have been confused because of the language barrier. The following exchange then ensued:

> *The Court*: This is . . . really petty, [defense counsel]. I mean he said that he started on the Kroger side and he moved to the CVS side because the buyer told him that's where he was. I mean come on. You're just wasting everybody's time here.

> *Mr. Nyenhuis* [defense counsel]: Your Honor, I don't think I'm wasting everyone's time. It's very important to figure out where he was when the certain events happened.

> *The Court*: Well, yes. We'd like to know that, but it, it's pretty clear from his trial testimony and even from his exam testimony that he was on the CVS side, I guess, when the alleged robbery occurred. I mean does it -- the man obviously has a language problem. Are you just taking advantage of that to, to inject confusion into this trial?

> *Defense counsel*: No, your Honor. I'm trying --

> *The Court*: Does it --

> *Defense counsel*: -- to be very clear because I was going off of what he testified to at the preliminary examination --

> *The Court*: Well --

> *Defense counsel*: -- transcript.

> *The Court*: -- who knows what he -- okay. But move on.

> I, I don't think I -- this point is worth any more time. That's my view and I make these calls, so move on.

> *Defense counsel*: Okay. I would ask that you use that point that I made and instruct the jury that's for impeachment that he testified --

> *The Court*: I have --

> *Defense counsel*: -- previously --

*The Court*:  -- no idea if it's a prior incon -- frankly I haven't heard a prior inconsistent statement.

*Defense counsel*:  Right.  He testify [sic] that he was at the --

*The Court*:  Well, [defense counsel], move on.

Defendant argues that he was denied a fair trial because (1) the judge's comments belittled defense counsel during cross-examination of a crucial witness and (2) the comments improperly influenced jurors by communicating to them that defense counsel was wasting their time, being petty, and was trying to confuse them.

To determine whether a trial judge's conduct "pierced the veil of judicial impartiality," this Court evaluates several factors, "including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions." *Stevens*, 498 Mich at 172.

While the trial court's remarks here were pointed and exhibited impatience, they did not show bias nor "pierce the veil of judicial impartiality" because they did not "create the appearance of advocacy or partiality." *Id*. at 170.  A trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" in order to make the interrogation and presentation effective for the ascertainment of the truth.  MRE 611(a)(1). Here, the judge's remarks were not based on bias against a party; they were addressing the repetitive nature of defense counsel's questions of the complainant.  Counsel was perseverating about possible discrepancies between the complainant's trial testimony and his preliminary examination testimony, despite the complainant repeatedly clarifying his testimony.  The trial court let this line of questioning go on for some time, giving defense counsel an adequate opportunity to question the witness about issues that counsel deemed important.  When questioning became increasingly repetitive, the trial court appropriately exercised reasonable control over the interrogation of the witness, see MRE 611(a)(1), and told defense counsel to move on.  While the trial court's language that defense counsel questioning was "really petty" and "wasting everyone's time" may have been harsh, the trial court was conveying that defense counsel already asked for—and received—the same information multiple times, and that information was not relevant to the robbery or defendant's possible role in the robbery.

The trial court's remarks, in context, reveal that the judge was not acting out of bias or partiality, but in an effort to control the proceedings by moving the questioning from a topic that had been thoroughly covered.  The trial court's comments did not deny the jury the information that defendant was offering about possible discrepancies in the complainant's statements. Moreover, this is the sole instance that defendant points to as showing bias, and it was not egregious.  See *Stevens*, 498 Mich at 171 ("A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality.").  While defendant is correct that the trial judge did not make similar comments to the other side, this instance was, again, the sole instance in which the judge made an allegedly inappropriate remark to either party.  And in the context of

the entire trial, this single instance of allegedly inappropriate conduct was minor and brief, and the trial court, in its final instructions, instructed jurors to ignore any opinions that they thought the trial judge held. Jurors are presumed to follow their instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 299 (1998), so "a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct," including "any appearance of advocacy or partiality by the judge." *Stevens*, 498 Mich at 177. Considering the totality of the circumstances, we do not find it reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party, and therefore conclude that defendant's claim of judicial bias does not entitle him to appellate relief.

Affirmed.


/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica